***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser as well as the briefs and oral argument before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. Accordingly, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Houser.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At all relevant times, the defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the plaintiff and the defendant-employer on or about November 24, 1998, the date of the alleged injury by accident.
3. The Industrial Commission has jurisdiction over the parties and the subject matter.
4. All parties have been correctly named, and there is no question as to misjoinder or nonjoinder of parties.
5. Plaintiff's average weekly wage was $384.00, with a compensation rate of $256.01, subject to wage verification.
6. At the hearing, the parties submitted the following:
a. A Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
b. A Packet of Industrial Commission Forms, which was admitted into the record, and marked as Stipulated Exhibit (3); and
c. A Packet of Records from Southeastern Community College, which was admitted into the record, and marked as Stipulated Exhibit (3).
7. The issues for determination are as follows:
a. Whether plaintiff has failed to cooperate fully with defendants' vocational rehabilitation efforts in violation of a prior Order of the Industrial Commission;
b. If plaintiff failed to cooperate with defendants' vocational rehabilitation efforts, did plaintiff's circumstances justify his refusal;
c. If plaintiff failed to cooperate with defendants' vocational rehabilitation efforts, for what period should benefits cease to be paid;
d. Whether defendants' Industrial Commission Form 24 Application should have been approved; and
e. To what, if any, further benefits is plaintiff entitled.
 ***********
Based upon all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the time of the hearing before the Deputy Commissioner, plaintiff was thirty-eight years old. He had attended high school but did not graduate.
2. On November 24, 1998, plaintiff sustained an injury by accident to his back. Defendants admitted the compensability of plaintiff's injury through the filing of an Industrial Commission Form 60. Pursuant to this Form 60, defendants commenced and have continued to pay indemnity compensation to plaintiff.
3. Subsequent to his injury by accident, plaintiff underwent a lengthy period of medical treatment. After a series of other diagnostic examinations, on February 25, 1999, plaintiff had a discogram, which revealed a radial tear on the left at the L4-L5 level and bilateral radial tears at the L5-S1 level. On September 21, 1999, plaintiff had surgery consisting of a bilateral posterior lumbar fusion at the L5-S1 level. During the period between his discogram and surgery, plaintiff's pain had increased to an incapacitating degree, based on stipulated medical testimony submitted at the hearing before the Deputy Commissioner.
4. On November 7, 2000, another fusion procedure was performed and a supportive cage device was implanted. Plaintiff's pain symptoms continued and doctors performed a second surgery on his back.
5. On May 4, 2001, plaintiff was released to return to work with permanent restrictions of no lifting greater than fifty pounds, no frequent bending, stooping, or twisting, and sitting at least once per hour as needed. Plaintiff was also assigned a twenty-five percent (25%) permanent partial disability rating for his back.
6. On June 7, 2001, Ms. Ellen Lee-Dudley of CorVel Corporation was assigned as plaintiff's vocational rehabilitation counselor. Defendants contend that plaintiff failed to sufficiently cooperate with vocational rehabilitation by failing to adequately pursue his equivalent high school diploma and by failing to sufficiently pursue job leads.
7. On June 4, 2002, in response to a Motion filed by defendants, Executive Secretary Tracey H. Weaver issued an administrative order, requiring plaintiff to comply with future reasonable vocational rehabilitation services provided by defendants.
8. On April 3, 2003, defendants filed an Industrial Commission Form 24 seeking to terminate the plaintiff's indemnity compensation because he had failed to fully comply with vocational services provided by defendants in violation of the June 4, 2002, order. Following an administrative hearing, Special Deputy Commissioner Elizabeth M. Maddox filed an Order on May 1, 2003, finding that defendants had failed to show that plaintiff had unjustifiably refused to cooperate with vocational rehabilitation.
9. Plaintiff met regularly with Ms. Lee-Dudley and vocational rehabilitation professionals later assigned to his case. During these meetings, plaintiff would consent to perform certain tasks before the next meeting. These tasks were set forth in Client Responsibility Forms, also referred to as CR Forms. Ms. Lee Dudley contends that on July 13, 2001, she recommended to plaintiff that he obtain an equivalent high school diploma. As of the date of the Deputy Commissioner hearing, plaintiff had not yet obtained his diploma. During his testimony at the Deputy Commissioner hearing, plaintiff did not deny that such a recommendation had been made, but insisted that he did not interpret the recommendation as a compliance requirement. Additionally, plaintiff testified that aside from Ms. Lee-Dudley's initial recommendation, she never referenced obtaining an equivalent high school diploma in the CR Forms during the ten-month period she was assigned to his case.
10. Plaintiff's case was later transferred to Mr. Zach Zuehlke. The credible evidence of record supports the finding that when plaintiff's file was transferred to Mr. Zuehlke, Ms. Lee-Dudley did not mention the need for plaintiff to obtain an equivalent high school diploma or that it was a focus of her work. Mr. Zuehlke testified that he did not document any formal request that the plaintiff obtain an equivalent high school diploma until the end of November 2002, although the benefits of having a diploma had been generally discussed. On December 18, 2002, Mr. Zuehlke wrote to plaintiff and acknowledged plaintiff's report that he had inquired with Southeastern Community College about its GED program and schedule for December 2002. In January 2003, plaintiff complied with Mr. Zuehlke's request that he investigate obtaining a pretest for his equivalent high school diploma. Because of childcare issues and plaintiff's wife working in the tax field, it was agreed that plaintiff could wait until after April 2003 to take the pretest. However, plaintiff actually began the pretest process prior to April 2003. Subsequent to April 2003, plaintiff assisted in the care of a dying sister. Accordingly, he and Mr. Zuehlke searched for alternatives to traditional community college GED programs, such as on-line, Internet programs.
11. Ms. Betty Turner, an instructor with the GED program at Southeastern Community College, testified that plaintiff enrolled in her program in January 2004 and took the TABE test to determine his level of education. Based upon his scores, plaintiff qualified to take a pretest in science, social studies and literature. Through study, plaintiff later qualified to take the language test. As of the date of Ms. Turner's deposition, plaintiff had completed three of the five parts of the GED test and was scheduled to take a fourth part on June 7, 2004.
12. In December 2003, Mr. Lee Anzaldi was hired to replace Mr. Zuehlke, and was asked to meet with plaintiff regarding his GED program. Mr. Anzaldi testified that he first met with plaintiff on February 2, 2003, and that he recommended plaintiff discontinue his job search efforts and concentrate full time on obtaining his equivalent high school diploma. Prior to this initial and only meeting, Mr. Anzaldi had determined to remove plaintiff from his current GED class, and enroll him in one requiring twenty-five hours per week of class time. Then, on 12 February 2004, Mr. Anzaldi wrote a letter expressing his opinion that there was reason to require plaintiff to attend GED classes five days and twenty-five hours per week. Mr. Anzaldi met only once with plaintiff, provided no job leads, and removed himself from the case as of February 12, 2004.
13. Regarding job search efforts, Mr. Zuehlke testified that plaintiff was good about following up on job leads. Additionally, during the period in which he was involved in the care of his dying sister, plaintiff continued to cooperate with Mr. Zuehlke. From August 2002 through December 2003, plaintiff met with Mr. Zuehlke on approximately thirty-four occasions. During that period Mr. Zuehlke searched for jobs regardless of whether those jobs required a minimum high school diploma. During that period, no prospective employer ever declined employment to plaintiff because he did not have a high school diploma or an equivalent one.
14. Plaintiff has admitted that at times, he has not been able to pursue job leads or his GED as consistently as defendants might have desired, but that this was caused by a series of personal crises. Mr. Zuehlke testified that he was aware of personal problems plaintiff was experiencing beginning in late 2002. Plaintiff's mother had surgery to remove a lung due to cancer and his sister's lung cancer came out of remission and became terminal. Both his mother and sister resided with plaintiff and his wife. In addition, plaintiff and his wife had a son born in December 2002.
15. The Deputy Commissioner found that plaintiff had reasonably cooperated with defendants' vocational rehabilitation efforts and had not violated the Order of the Executive Secretary dated June 4, 2002.
16. On January 10, 2005, the Full Commission heard oral arguments of the parties regarding whether the plaintiff unjustifiably delayed obtaining his GED from June 4, 2002 to January 20, 2004, and whether plaintiff cooperated with vocational rehabilitation as ordered by the Industrial Commission. On January 21, 2005, the Full Commission, ordered the plaintiff to complete his GED within 45 days of receipt of the Order and to comply with defendant's job placement efforts.
17. Plaintiff successfully completed his GED and on February 26, 2005, the North Carolina State Board of Community Colleges awarded plaintiff an equivalent high school diploma.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has reasonably cooperated with one prong of defendants' vocational rehabilitation efforts by receiving his high school equivalency diploma. N.C. Gen. Stat. § 97-25.
2. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to have the defendants pay for all his related medical expenses incurred or to be incurred, including vocational rehabilitation, as may be reasonably required to effect a cure, give relief or lessen the period of disability. In order to lessen the period of disability, the plaintiff must cooperate with the remaining prong of defendants' vocational rehabilitation by complying with all of defendants' job placement efforts in obtaining suitable employment. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
3. Defendants have shown no grounds upon which to terminate or suspend plaintiff's benefits. N.C. Gen. Stat. § 97-18.1.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall continue to pay to plaintiff ongoing total disability benefits at the rate of $256.01 per week until further Order of the Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter approved.
2. Defendants shall pay for all of plaintiff's medical expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident on November 24, 1998, including vocational rehabilitation, for so long as such evaluations, examinations and treatments may be reasonably required to effect a cure or give relief and will tend to lessen the period of plaintiff's disability.
3. Plaintiff shall cooperate and comply with all of defendants' job placement efforts in obtaining suitable employment.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff, who shall receive every fourth check.
5. Defendants shall pay the costs.
This the ___ day of April 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER